## S00A0204. BRINSON v. THE STATE.
(529 SE2d 129)

HINES, Justice.

Tina Denise Brinson appeals her conviction for felony murder while in the commission of aggravated assault for the fatal stabbing of James Nelson Glenn III. She challenges the sufficiency of the evidence of her guilt and the trial court's admission of certain evidence as similar transactions. The challenges are without merit, and we affirm Brinson's conviction.[1]

On the evening of August 27, 1997, Brinson left her home,

---

[1] The killing occurred on August 27, 1997. On July 15, 1998, a Bibb County grand jury indicted Brinson for Glenn's murder "with malice aforethought, and while in the commission of the felony of aggravated assault." Brinson was tried before a jury on November 16-17, 1998, and she was found guilty of felony murder. She was sentenced to life imprisonment by order dated November 17, 1998, and filed November 19, 1998. A motion for new trial was filed on November 24, 1998, new counsel filed an amended motion for new trial on August 25, 1999, and a new trial was denied on September 15, 1999. A notice of appeal to the Court of Appeals was filed on September 29, 1999. The Court of Appeals transferred the appeal to this Court on October 15, 1999, and it was docketed in this Court on October 25, 1999. The case was submitted for decision on December 15, 1999.

walked over to a nearby "shot house," and asked her friend Brown to buy her a drink. Brinson seemed "all upset" and told Brown, "I want this bitch out of my house." Brinson walked back to her home, and Brown followed behind to find out who Brinson was talking about. From the street, Brown could see into Brinson's residence; he saw a man lying on the floor and bloody sheets, and Brinson was "pulling on him telling him to get up" and saying that she wanted him to get out of her house. Brown walked back to the "shot house" and told the man that ran it that something had happened at Brinson's home and that Brinson might have killed someone.

Hunter then arrived at the "shot house," and Brown stated to her that there had been fighting at Brinson's home and that Brinson "done killed the man." Hunter went to investigate, and she too viewed a naked and bloody man lying on a mattress; Brinson was wiping him off with a rag. When Brinson spied Hunter, she told her to get away from the front door; Brinson attempted to close the damaged front door and darkened the room. Hunter notified police.

When the officer arrived at Brinson's residence, knocked at the door, identified himself and stated that the police were there to investigate a stabbing, Brinson responded that she did not need any help. The police found Glenn naked and on a mattress covered with blood; a door was lying partially across the body. Brinson had fresh blood on her face and blood on her nightclothes. She told police that she and Glenn had been drinking, and she asked whether her "old man" would be taken to the hospital. Glenn had been fatally stabbed in the chest; he had punctures of the pericardial sack and the pulmonary artery. He had also sustained blunt force injuries to the head, and his nose had been fractured. Glenn had a blood alcohol level of .3.

The police recovered from Brinson's residence a blood-stained knife, a baseball bat, bloodied sheets, towels, clothing and tennis shoes, and a blood-covered washcloth; in an outside trash can, police found a pair of jeans and a pair of underwear, both of which had been cut and were soiled with human excrement. Tests revealed that the blood found on the knife and on Brinson's face and clothing was Glenn's. Also, the characteristics of the knife were consistent with Glenn's stab wound.

Brinson, who did not appear to be intoxicated, insisted that Glenn was not dead. But she admitted to police that Glenn had soiled himself, that she had cleaned him, and that she had cut his clothes off and thrown them in the trash can. Brinson later related to police that she had been at home with a male friend when Glenn arrived, that Glenn asked her why she had her clothes off, and that she told him that it was her house and that she could do anything she wanted to. She denied a confrontation with Glenn, and repeatedly stated that Glenn was merely asleep.

The State presented evidence of an earlier altercation between Brinson and the victim involving drinking and physical contact. It also introduced evidence of two violent episodes involving Brinson and her former boyfriend, Smith. Smith testified that at their home he got in an argument with Brinson over his drinking; Smith wanted a visiting male friend to leave and believed that Brinson was siding with the friend; Smith pushed Brinson and she backed up against a dresser, reached around, grabbed a pair of scissors, and stabbed Smith in the cheek. The second incident occurred when Brinson and Smith were drinking at a "shot house." Smith wanted to leave, and Brinson did not; Smith pushed and shoved Brinson as they were walking; Brinson got angry, picked up a razor blade from the ground, and cut Smith on the cheek, arm, neck, and across the chest, near his heart.

1. Brinson contends that the evidence was insufficient to convict her of felony murder based on aggravated assault because the State did not prove that Glenn was conscious and thus, in "reasonable apprehension of immediately receiving a violent injury," an element of simple assault. See OCGA § 16-5-20 (a) (2). She also maintains that the entirely circumstantial evidence failed to exclude all reasonable hypotheses save that of her guilt. See OCGA § 24-4-6. But, the contentions are unavailing.

It is true that central to the offense of aggravated assault is that an assault as defined in OCGA § 16-5-20 be committed on the victim. OCGA § 16-5-21. But, Brinson ignores the fact that a simple assault also occurs when a person "[a]ttempts to commit a violent injury to the person of another." OCGA § 16-5-20 (a) (1); see also *Dunagan v. State*, 269 Ga. 590, 591 (2) (502 SE2d 726) (1998). Therefore, "[a] victim's 'apprehension' of receiving a violent injury is not an essential element of an assault in which it is alleged that the defendant actually attempted to commit a violent injury to the person of the victim." *Love v. State*, 268 Ga. 484, 485 (1) (490 SE2d 88) (1997). Brinson was charged with the underlying felony of aggravated assault by stabbing Glenn with a knife, a deadly weapon. Thus, it was unnecessary for the State to show Glenn's apprehension of the violent injuries inflicted on him.

What is more, questions regarding the reasonableness of hypotheses about the commission of a crime are generally for the jury to decide, and when the jury is authorized to find that the circumstantial evidence was sufficient to exclude every reasonable hypothesis save that of guilt, the jury's finding is not to be disturbed. *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998). That is the case here. The evidence authorized the jury to find beyond a reasonable doubt that Brinson was the person who fatally stabbed Glenn. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Finally, there is no merit to Brinson's contention that the trial court erred in admitting Smith's testimony about two prior incidents of violence with Brinson, thereby improperly placing her character in issue. Brinson argues that the incidents were not sufficiently similar because they were situations of self-defense, in which she did not use a knife or "obvious weapon." But, Brinson is erroneously focusing upon the differences between the earlier transactions and the present killing, rather than correctly focusing upon their similarities. *Smith v. State*, 270 Ga. 68, 69 (2) (508 SE2d 145) (1998); *Farley v. State*, 265 Ga. 622, 624 (2) (458 SE2d 643) (1995). The incidents with Smith, like the present case, involved drinking and Brinson stabbing or cutting her boyfriend with a sharp instrument as part of a domestic dispute. The violent instances with Smith were sufficiently similar so that proof of them was relevant to show identity, bent of mind, and intent and, thus, tended to establish Brinson's commission of the fatal attack on Glenn. *Smith v. State*, supra at 69 (2).

*Judgment affirmed. All the Justices concur except Fletcher, P. J., who concurs in Division 1 and in the judgment.*

DECIDED MAY 1, 2000.

*William D. Phillips*, for appellant.

*Charles H. Weston, District Attorney, Howard Z. Simms, Pamela Y. White-Colbert, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wylencia H. Monroe, Assistant Attorney General*, for appellee.