**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**June 19, 2014**

# In the Court of Appeals of Georgia

A14A0655. CHAMBERS v. THE STATE.

McFADDEN, Judge.

After a jury trial, Richard Chambers was convicted of robbery and theft by taking, among other offenses. He challenges the sufficiency of the evidence and argues that the trial court erred in preventing him from asking a voir dire question. We find, however, that the evidence was sufficient to support the convictions and the trial court did not abuse his discretion in ruling that the voir dire question was improper. Accordingly, we affirm.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction,

the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine

witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

*Cordy v. State*, 315 Ga. App. 849 (1) (729 SE2d 13) (2012) (citation omitted).

So viewed, the evidence showed that around 6 a.m. on November 10, 2012, Hubert Dowdy was driving home from work in his black Jeep when an SUV began following him closely, flashing its lights and honking. Believing that he was being pulled over by law enforcement, Dowdy stopped. A woman from the SUV approached Dowdy and insisted that the Jeep belonged to her and that it used to be painted blue. Dowdy replied that the Jeep was his and got out of the Jeep to open the hood and show the woman that the Jeep previously had been painted silver, not blue. At that point, a man from the SUV got into the Jeep and the woman told him to drive away. Dowdy asked if he could retrieve personal items from the Jeep but the woman refused. Another man from the SUV – whom at trial Dowdy identified as Chambers – grabbed Dowdy from behind, pulled him backward, placed him in a headlock, and hit him twice, injuring his nose. Dowdy was afraid and did not fight back. The first man then drove away in the Jeep, which contained a handgun belonging to Dowdy, and Chambers and the woman drove away in the SUV. Later, the Jeep was located in

2

front of the woman's apartment, bearing a new license tag that the woman had put on it. Law enforcement officers found Chambers asleep inside the apartment, with Dowdy's gun resting on his stomach.

Chambers argues that this evidence was insufficient to support his convictions for robbery of the Jeep and theft by taking of the gun. We disagree. Pertinent to this appeal, a person commits the offense of robbery "when, with intent to commit theft, he takes property from the person or the immediate presence of another . . . [b]y use of force[,]" OCGA § 16-8-40 (a) (1), and the offense of theft by taking "when he unlawfully takes . . . any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken[.]" OCGA § 16-8-2.[1] The evidence authorized the jury to find that Chambers was part of a group which, by use of force, stopped Dowdy and took both his Jeep and his gun. See OCGA § 16-2-20 (a), (b) (3) (person who intentionally aids or abets in the commission of a crime may be charged with and convicted of the commission of the crime as a party thereto). Chambers argues that he did not intend to commit these

---

[1] The jury also found Chambers guilty of robbery of the Jeep under OCGA § 16-8-40 (a) (2) and of theft by taking of the Jeep, but for purposes of sentencing his convictions on these offenses were merged into his conviction for robbery of the Jeep under OCGA § 16-8-40 (a) (1).

3

offenses but believed the Jeep belonged to the woman in the SUV. A factfinder, however, "may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted," OCGA § 16-2-6, and it was for the jury in this case to gauge the credibility of Chambers's testimony and evidence regarding his intent. See *Powell v. State*, 291 Ga. 743, 745 (1) (733 SE2d 294) (2012). The evidence in this case supported a finding that Chambers possessed the necessary intent to commit robbery of the Jeep and theft by taking of the gun contained within the Jeep.

2. *Voir dire.*

Chambers argues that the trial court erred in a ruling during voir dire. As defense counsel asked followup questions of a prospective juror, the following exchange occurred:

> [Defense counsel]: . . . Once a person has admitted to breaking the law in any way, and it could have been years ago or whatever, can that person ever be trusted again?
>
> The Juror: I think if they can prove themselves to be trusted, I think so.
>
> [Defense counsel]: So you think if something happened in the past that they admitted to, whether it be a violation of the law in some way or a broken trust –

4

[Prosecutor]: Judge, I'm going to have to object on prejudicing the credibility of witnesses.

. . .

[Defense counsel]: Judge, I am just asking about a general pattern of human behavior in this case. Not at all going to the witnesses in this case.

The Court: Sustain the objection.

The trial court explained that he sustained the objection because he viewed the question to improperly ask the prospective juror to prejudge the evidence.

"Georgia law allows both the [s]tate and the defense in criminal cases the right to an individual examination of prospective jurors from which the jury is to be selected." *Alexander v. State*, 294 Ga. 345, 347 (2) (751 SE2d 408) (2013) (citing OCGA § 15-12-133). Nevertheless, "the single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. Questions of a technical legal nature and questions that call for prejudgment are improper in a voir dire examination." *Alexander*, 294 Ga. at 346-347 (2) (citation and punctuation omitted). Prejudgment questions are those "that require a prospective juror to assume facts that

5

are yet to be proved and to prejudge the case based on those assumed facts." *Ellis v. State*, 292 Ga. 276, 280 (2) (736 SE2d 412) (2013) (citation omitted). "Hypothetical questions involving evidence or requiring a response from a juror which might amount to a prejudgment of the case are improper and should be excluded from the examination of prospective jurors." *Pinion v. State*, 225 Ga. 36, 37 (4) (165 SE2d 708) (1969) (citation omitted). "Since there is often a fine line between asking potential jurors how they would decide the case and questions that merely seek to expose bias or prejudice, the scope of the voir dire examination, of necessity, must be left to the sound discretion of the trial court." *Alexander*, 294 Ga. at 347 (2) (citation omitted).

The trial court did not abuse his discretion in sustaining the state's objection. At the time of the objection, Chambers's counsel was posing a hypothetical question about the trustworthiness of a person who previously had violated the law or broken a trust. That question could be construed to ask the prospective juror to prejudge the case based on assumed facts not yet proved, namely Chambers's past criminal history, which the state intended to introduce as similar transaction evidence and for impeachment purposes. Moreover, the trial court already had allowed some inquiry into the prospective juror's thoughts on the trustworthiness of a person who had

6

admitted to breaking the law. See *Alexander*, 294 Ga. at 347-348 (2) (finding no abuse of discretion in trial court's restriction of followup voir dire question where trial court did not preclude questioning about the entire subject matter and counsel's other inquiries were sufficiently specific to allow panel members to answer questions so as to reveal any potential bias). Cf. *Ellis*, 292 Ga. at 281 (2) (even assuming defendant was entitled to ask voir dire question, finding no reversible error in trial court's limitation of questioning where trial court permitted other inquiry on the specific topic). Although Chambers suggests on appeal that the trial court's ruling limited his ability to rehabilitate the prospective juror on the issue, the prospective juror's answer to the earlier voir dire question on the issue – that she thought a person could "prove themselves to be trusted" notwithstanding prior criminal history – did not reveal a bias requiring rehabilitation.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*